UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MANDRIC STRODDER, a/k/a
MANDRIC BONNER.

                                   Plaintiff,

v.

PATRICIA CARUSO, Director, ANDREW
JACKSON, Warden, SCOTT NOBLES, Deputy
Warden, and DARRELL STEWARD, Asst. Deputy
Warden,

                                     Defendants.
_____/

Civil No. 06-10251
Hon. David M. Lawson
Magistrate Judge Charles E. Binder

**ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE
JUDGE IN PART, OVERRULING OBJECTIONS, DENYING MOTION
FOR LEAVE TO FILE SUPPLEMENTAL PLEADINGS, AND DISMISSING ACTION**

Plaintiff Mandric Strodder, presently in custody at Michigan's Earnest C. Brooks Correctional Facility in Muskegon, Michigan, filed a *pro se* complaint on January 19, 2006 under 42 U.S.C. § 1983 claiming that the defendants violated his constitutional rights in October through December 2005 by refusing his requests to be returned to the Tobacco-Free Housing Unit, thereby exposing him to environmental tobacco smoke (ETS). He alleges a violation of the Eighth Amendment's ban on cruel and unusual punishment. The case was referred to Magistrate Judge Charles E. Binder for general case management on February 21, 2006. On April 26, 2006, Judge Binder filed the first of two reports recommending that the case be dismissed with prejudice *sua sponte* because the plaintiff failed to state a claim upon which relief can be granted. Alternatively, Magistrate Judge Binder recommended the case be dismissed without prejudice because the plaintiff failed to exhaust his administrative remedies. On July 17, 2006, the plaintiff filed a motion seeking permission to file a supplemental pleading, which also was referred to Judge Binder. The magistrate

judge filed a second report recommending that the motion be denied because the Prison Litigation Reform Act does not permit *in forma pauperis* plaintiffs to amend their complaints to avoid *sua sponte* dismissal. The plaintiff filed timely objections to both reports, and the case is before the Court for *de novo* review. The Court finds that the magistrate judge correctly concluded that the plaintiff's complaint fails to state a claim under the Eighth Amendment, and although it would not be proper to dismiss at this stage for failing to exhaust administrative remedies, dismissal is required under the first ground. In addition, the magistrate judge followed the law of this Circuit in reporting that amendments of pleadings to avoid dismissals after initial screening are not allowed under the Prison Litigation Reform Act. Therefore, the Court will deny the motion for leave to amend and dismiss the case.

I.

According to the complaint, the incidents leading to this lawsuit occurred while the plaintiff was housed at the Mound Correctional Facility in Detroit, Michigan over a period of about two-and-a-half months. The plaintiff is a non-smoker who previously had a heart attack and has an irregular heartbeat. Because of his health condition, the plaintiff's application to be housed in the Tobacco-Free Housing Unit at Mound CF was granted.

The plaintiff was removed from the Tobacco-Free Housing Unit on October 3, 2005 and placed in detention after a correctional facility resident unit officer found contraband (liquid white-out, germ-free hand sanitizer, and glue) in the plaintiff's cell. A hearing was held and it was determined that the plaintiff was in possession of items that are considered dangerous because they are labeled "flammable." On October 12, 2005, the plaintiff went before the Security Classification Committee (SCC), which determined that the plaintiff should be released to general population after

his detention was completed. On October 17, 2005, after the ten-day detention was complete, the plaintiff was not returned to the Tobacco-Free Unit but instead was placed in general population where smoking is prevalent. Although the plaintiff's cell-mate did not smoke, the plaintiff alleged that smoke from other areas permeated his cell. The plaintiff alleged that he began experiencing tightness in his chest, shortness of breath, and dizziness. The plaintiff filed an application to be returned to the Tobacco-Free Housing Unit, but the application was rejected because of the determination by SCC.

On October 24, 2005, the plaintiff filed a first-step grievance regarding his placement in general population. The plaintiff was told that he would receive a response by November 21, 2005; however, he did not receive an answer. The plaintiff filed a step-two grievance on November 30, 2005. The plaintiff received a response on December 5, 2005 informing him that he could re-apply for housing in the Tobacco-Free Housing Unit and indicating that the administration considered this matter resolved. The plaintiff submitted another application for housing in the smoke-free unit that same day.

On December 6, 2005, the plaintiff was told by defendant Nobles that he would be permitted to return to the smoke-free housing unit soon. On December 12, 2005, the plaintiff filed a step-three grievance appeal with the MDOC central office. The plaintiff was returned to the Tobacco-Free Housing Unit on December 15, 2005.

The plaintiff's complaint contains five counts and seeks $1,000,000 in compensation, an injunction, and additional training for prison guards. Counts one through three allege that the defendants' decision to put the plaintiff in the general population unit was cruel and unusual punishment in violation of the Eighth Amendment. Count four alleges that the defendants violated

the plaintiff's Fourteenth Amendment right to be confined in a safe environment. Count five alleges that the defendants violated the state Clean Indoor Air Act.

Judge Binder conducted a screening for merit, which is required for all cases in which the plaintiff is allowed to proceed without prepayment of fees. *See* 28 U.S.C. § 1915(e)(2)(B); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). Screening also is required for complaints filed by prisoners seeking relief from governmental units or employees, 28 U.S.C. § 1915A, or challenging conditions of confinement, 42 U.S.C. § 1997e(c)(1). Judge Binder recommended that the complaint be dismissed because the plaintiff's "temporary 60-day exposure to second-hand smoke during his placement in general population with a non-smoking roommate" did not meet the requirement that the risk of exposure to ETS was both subjectively and objectively unreasonable. First R&R at 4. Alternatively the magistrate judge recommended that the plaintiff's complaint be *sua sponte* dismissed without prejudice for failing to demonstrate total exhaustion of administrative remedies because the plaintiff "failed to allege or demonstrate that he ever named Defendants Caruso, Jackson, or Nobles in a Step I grievance that was appealed through Steps II and III of the process." First R&R at 5.

The substance of the plaintiff's objection to this report is that the magistrate judge based his conclusion on the erroneous fact that the plaintiff's cell mate during his time in general population was a non-smoker. In fact, the plaintiff's cell mate was a smoker, but he refrained from smoking while in the cell out of respect for the plaintiff's medical condition. The plaintiff states his cell mate smoked so much that the staff referred to him as "Smokey the Bear." The plaintiff also objected to the magistrate judge's finding that all administrative remedies had not been exhausted because all defendants were not named in the plaintiff's step one grievance.

As noted above, the plaintiff filed a motion for leave to submit a supplemental pleading, which was referred to Judge Binder. The magistrate judge filed a second report recommending denial because *in forma pauperis* plaintiffs may not amend a complaint to avoid *sua sponte* dismissal. The plaintiff objected to this report stating that he is not attempting to amend his original complaint, but he is only attempting to "bring the court up to date[] on events which have happened since the filing of the original complaint." Pl.'s Obj. to Second R&R at 2. Thereafter, the plaintiff filed a second motion to file supplemental pleadings, which appears to be a duplicate of the first.

II.

The Court has conducted a *de novo* review of the pleadings in light of the Report and Recommendation of the Magistrate Judge and the objections filed by the plaintiff, as required by 28 U.S.C. § 636(b)(1)(B). In conducting this review, the Court is mindful that a *pro se* litigant's complaint is to be construed liberally, *Jourdan v. Jabe*, 951 F.2d 108, 100 (6th Cir. 1991), and is held to "less stringent standards" than a complaint drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nonetheless, such complaints still must plead facts sufficient to show a redressable legal wrong has been committed. Fed. R. Civ. P. 12(b); *Dekoven v. Bell*, 140 F. Supp. 2d 748, 755 (E.D. Mich. 2001). The screening mandated by Congress in § 1915(e)(2) includes the obligation to dismiss civil complaints if they "fail to state a claim upon which relief may be granted." *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *McGore*, 114 F.3d at 604.

The Supreme Court has held that the Eighth Amendment imposes upon prison officials the duty to "provide humane conditions of confinement," and among the obligations attendant to the discharge of that duty is to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This obligation, however, is not unqualified.

To the contrary, it is tightly circumscribed by rules requiring certain levels of proof when a prisoner argues that his conditions of confinement have crossed the boundary established by "contemporary standards of decency" incorporated into Eighth Amendment jurisprudence. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (observing that "the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society'") (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion)). Thus, although under the Eighth Amendment prisoners have a limited constitutional right to proper medical care, *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), that right is violated only when corrections officials are deliberately indifferent to the prisoner's serious medical needs. *Id.* at 104.

A claim that the Eighth Amendment has been violated by a prison official's deliberate indifference to a prisoner's adequate medical care requires proof of both a subjective and an objective component. *Farmer*, 511 U.S. at 834. To satisfy the subjective component, the plaintiff must show that "the prison official possessed 'a sufficiently culpable state of mind in denying medical care.'" *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). To satisfy the objective component, the plaintiff must allege that the medical need asserted is "sufficiently serious." *Farmer*, 511 U.S. at 834.

The Supreme Court has held that a prisoner's direct and prolonged exposure to ETS can satisfy both prongs of the *Farmer* test. *Helling v. McKinney*, 509 U.S. 25 (1993). In *Helling*, the plaintiff William McKinney alleged that he was incarcerated in a Nevada prison with a cell mate who smoked five packs a day. The Court held that his complaint stated a viable claim. However, the Court stated that on remand the plaintiff was required to "show that he himself is being exposed to unreasonably high levels of ETS." *Id.* at 35. The Court explained:

> Also with respect to the objective factor, determining whether McKinney's conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Id.* at 35-36.

In *Talal v. White*, 403 F.3d 423 (6th Cir. 2005), the plaintiff was allergic to tobacco smoke and confined in the no-smoking housing unit at the Turney Center Industrial Prison; but he was "subjected to excessive levels of smoke at the hands of both staff and other inmates" in a facility that had a ventilation system that would merely re-circulate smoky air. In addition, the staff permitted smoking in the non-smoking areas. The court explained:

> To satisfy the objective component, a prisoner must show that his medical needs are "sufficiently serious." *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). The exposure to smoke must cause more than "mere discomfort or inconvenience." *Id.* at 735. Additionally, the prisoner must demonstrate that the risk is one which society deems "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36. To satisfy the subjective component, a prisoner must show that prison authorities knew of, and manifested deliberate indifference to, his serious medical needs. *Id.* at 32.

*Talal*, 403 F.3d at 426. The Sixth Circuit ruled that the plaintiff met the objective test by demonstrating that his illness was sufficiently serious. The court found that the plaintiff met the subjective component by showing that the prison officials were aware of his condition but continued to violate the no-smoking policy in the smoke-free hosing unit. The court distinguished this case from *Scott v. Dist. of Columbia*, 139 F.3d 940 (D.C. Cir. 1998), where "prison officials made good-faith efforts to enforce the prison's no-smoking policy." *Id.* at 428. The court concluded that "the mere existence of non-smoking pods does not insulate a penal institution from Eighth Amendment

liability where, as [in *Talal*], a prisoner alleges and demonstrates deliberate indifference to his current medical needs and future health." *Ibid.*

The allegations in the plaintiff's complaint do not rise to the level of objective unreasonableness required by *Helling* and *Talal*. Although the magistrate judge may have been incorrect in his belief that the plaintiff's cell mate was a non-smoker, the facts described by the plaintiff do not change the outcome. The plaintiff admits that his cell mate did not smoke in the cell. The plaintiff complains that his cell mate smelled like smoke. However, it is not the smell of smoke that poses a health risk; it is exposure to the smoke itself. The fact that the plaintiff's roommate was a smoker who did not smoke in the cell does not suggest a level of exposure that would pose an unreasonable risk of harm to the plaintiff.

The magistrate judge concluded that the plaintiff could not show that he had been exposed to a risk that "society deems 'so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.'" *Talal*, 403 F.3d at 426 (quoting *Helling*, 509 U.S. at 36). The plaintiff's objections do not contain any information from which the Court can conclude otherwise. The plaintiff was held in the general population area for little more than two months. Taking into account "the realities of prison administration," *Helling v. McKinney*, 509 U.S. at 35-36, this is not such a long time for the prison to arrange for the plaintiff's return to the smoke-free unit, especially considering the fact that the plaintiff's cell mate agreed not to smoke in the cell out of respect for the plaintiff's health condition.

Nor has the plaintiff pleaded facts from which a reasonable fact finder could infer subjective indifference. According to the complaint, the defendants attempted to accommodate the plaintiff's request for non-smoking housing. The plaintiff's first application for housing in the smoke-free unit,

shortly after the creation of such a unit, was granted. In response to the plaintiff's grievances, the defendants informed the plaintiff that he would be moved into non-smoking housing. Shortly thereafter he was transferred to the non-smoking unit. The plaintiff spent only ten weeks in the general population area. It cannot be said that the defendants acted with deliberate indifference to the plaintiff's medical condition.

The plaintiff's objection to dismissal based on failure to exhaust administrative remedies has merit. Under *Jones v. Bock*, 127 S.Ct. 910 (2007), failure to exhaust no longer provides a basis for dismissal at the screening stage. However, because the plaintiff's Eighth Amendment claim has no merit, this objection is moot. The plaintiff's complaint fails to state an Eighth Amendment claim and must be dismissed under 28 U.S.C. § 1915(e)(2)(B).

Likewise, the objection to the recommendation to deny leave to supplement or amend the complaint does not withstand the weight of Sixth Circuit precedent. "Under the Prison Litigation Act, courts have no discretion in permitting a plaintiff to amend a complaint to avoid a *sua sponte* dismissal. If a complaint falls within the requirements of § 1915(e)(2) when filed, the district court should *sua sponte* dismiss the complaint." *McGore*, 114 F.3d at 612. It may seem incongruous that those trained in the law may enjoy liberal amendment rules, *see* Fed. R. Civ. Pro. 15(a) (stating that "leave shall be freely given when justice so requires"), while prisoners occupying pauper status must get it right the first time. Nonetheless, as the court of appeals "held in *McGore*, a plaintiff in a case covered by the PLRA may not amend his complaint to avoid a *sua sponte* dismissal. . . . Our rule in *McGore* requires that a plaintiff, who fails to make a sufficient allegation of exhaustion in their initial complaint, also not be allowed to amend his complaint to cure the defect." *Baxter v. Rose*, 305 F.3d 486, 488-89 (6th Cir. 2002). Although *Jones v. Bock*, 127 S.Ct. 910 (2007), eliminates the

failure to exhaust as a ground for *sua sponte* dismissal, the rule still prevents a prisoner from amending a complaint that is subject to *sua sponte* dismissal for failure to state a claim. The magistrate judge, therefore, correctly recommended denial of leave to amend the complaint by furnishing supplemental materials.

III.

Except for the recommendation to dismiss for failure to exhaust administrative remedies, the Court agrees with the findings and conclusions of the magistrate judge.

Accordingly, it is **ORDERED** that the Magistrate Judge's Reports and Recommendations [dkt #s 6 & 12] are **ADOPTED**.

It is further **ORDERED** that the plaintiff's objections [dkt #s 9 & 14] are **OVERRULED**.

It is further **ORDERED** that the plaintiff's motions to file supplemental pleadings [dkt #s 10, 13] are **DENIED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

                                      s/David M. Lawson  
                                      DAVID M. LAWSON  
                                      United States District Judge

Dated: July 19, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 19, 2007.

                    s/Felicia M. Moses  
                    FELICIA M. MOSES